on behalf of Mr. Phipps. Could you help me with a problem I'm having preparing for the case? Okay. I wanted to read the transcripts so that I could do the kind of analysis we're supposed to do under LSTAT and CBIRT and see if the second statements have sufficient voluntariness and independence of the first and so forth. And I couldn't find it. Where are the transcripts of the actual interrogations? Before and after the Miranda warning interrogations. The actual statements were not introduced at the hearing. The district court never heard the statements? Well, how can you possibly have meaningful appellate review of a case where we're obliged under Williams to conduct an analysis of whether there's any of the effect of what happened at the interviews? And we can't do it. Well, I actually agree, and I think it should be remanded. Well, no, I don't think it should be remanded. It's an obligation to provide it. I mean, if it weren't provided in the district court, it wasn't provided. We look at it now and we say, well, on the record that the district court had, he's perfectly right. Well, actually, if you do feel it's necessary for the review, and the burden's on the government. There was no burden on us. Why is the burden on the government? You're moving this to press, and these things were all taped, right, so you could get transcripts. You probably had transcripts because they were statements of your own client, right? I don't believe there was transcripts available. I believe the discs of the recordings and then the discs of the videotapes were available. They were provided to you, weren't they, under the discovery rules? Yes, they were. But they weren't provided to the district judge? No, they weren't. The district court at the hearing made a comment that if voluntariness became an issue, he could review the tapes. I don't think it's a voluntariness question, but I just don't understand how you can compare two stages, two separate interviews, and say, well, one, that it shows that there's an effect from the first one that spilled over to the second one. I mean, I just don't understand how you can do it without knowing what the discussion was. Well, again, I don't even know whether he could be talking about baseball, for all I know. Well, I can assure you they weren't talking about baseball. Well, I don't know. It might be a good thing to do to soften somebody up. I don't know how you can make any judgment at all about what was discussed. I mean, there's the officer testified that there was some overlap, but I don't know what overlap even means in this context. I don't know whether he confessed. I don't know whether he just made helpful statements. I don't know whether they discussed his computer or whether they discussed his addiction. I don't know what they discussed. Well, I think there's more evidence in the record than that. Specifically at Exeter Record 84 and 85, and this is from the agency, the same topics were discussed that had been discussed at the home. He has also confirmed. But I don't know what the topics were, either place. The topics, and these are at Exeter Record 85. Basically, he confirmed that he went over the same photographs of the photographs that were presented at the bars. I have no idea what those are. I mean, that's the whole point. It's all just a conversation in the air, because I have no earthly idea what was discussed either time. Well, again, with any Miranda or any statements issue, and this is confirmed by an Eighth Circuit case in Ollie regarding a two-step process. The burden of proof is on the government to prove by the requirements of the evidence. All right. Well, let me just ask you a concrete question. The tipping point in these cases can be basically you keep the law enforcement officers keep at it until they get the defendant to confess, and then they suddenly get religion and Mirandaizing. And the next minute, he is reconfessing. Did that happen here? I believe that the same statements. For your belief, I mean, did it? Does the record show that that's what happened? I believe the record shows that he made incriminating statements both before and after, because he was responding to questions regarding the investigation that had been done on the area. What incriminating statement did he make at home? We don't have the specific statements. Okay. What incriminating statement did he make at the police station? Again, we don't have the incriminating statements. But, again, the burden is on the government to show this. Why? Why? I just don't understand. Because any time statements are admitted, it's the government that has to show that there wasn't a constitutional violation. That's in Miranda. You moved to suppress. Correct. So you have to persuade the judge that there was a two-step process which runs afoul of the Supreme Court law. If Your Honor were to hold that, you'd be making a circuit conflict with the Eighth Circuit that says any time that you – that there's this two-step allegation, it is the government's burden to bring facts forward that it wasn't a deliberate two-step process. And that makes sense, because, I mean, Williams himself says – Well, they do have some facts. They do have some facts they brought forward. The interrogations were at different places. One was at his home, and one was at the police station. And then they have another fact, that although he was not free to go, and a reasonable person would not have thought he was free to go, nevertheless, the officer who interrogated him had told him he was free to go and mistakenly thought he was free to go. Actually, that – there was a dispute. He was asking for his phone number, which shows that that's not – wasn't there a purpose in going to his house. Well, now I have three questions in there. Let me try to get to all of them. As to the question of he was told he was free to go, that fact was disputed. There is testimony on each side, and the district court specifically said, I'm not going to resolve that factual dispute. It may have been the agent misremembering. It may have been – The district court went on from there. He said – he said he thought that the interrogating agent was sincere and that it was proved by asking for the phone number. He said he made specific findings on the phone number. If you read the – his holdings correctly, he makes specific findings as to the phone number and other relevant facts. I don't think you understand what we're asking you about. Yes. We've got this stuff on page 1160 of our decision in Williams that came down in 2006, and it says what a court must address. You moved to suppress, and it looks like you didn't give the district judge what he needed to do what Williams says he's supposed to do. Now, I thought when I looked at the excerpts, I must have just missed it. We do a lot of cases, and I couldn't find it. But now you're telling me, no, it isn't there. We didn't give it to the district judge. So I don't know what I can do here. Again, the burden – and I guess I've said it many times, and you don't agree, but the burden of production here is on the government. Why? Why? Because for any – when you allege a Miranda violation, the government has to prove by a preponderance of the evidence that they complied with Miranda. We allege that there's a two-step – Let me put it differently. What we have on the record here does show that. It shows that there were two interviews. One of them was at home, and one of them was a police officer. But that in and of itself is not a problem. Well, it shows that there's – It may implicate Miranda, but it isn't a problem. Then you've got the district judge hearing what he heard, saying, I believe – I think it was Officer Torres. Is that his name? Anyway, I believe the officer. And I don't believe that the officer went there intending to take advantage of and get a confession out of Phipps at home and then flip him a minute later in the second phase. That's because even this finding that there was no prearrangement is irrelevant in this case because that prearrangement is what his intent was when he first went to the house, what Agent Torres' intent was. No, they weren't going to arrest him. They got there. They went through the first interrogation. At the end of that, he gets his phone number back. The problem is they didn't leave the house at that point. Agent Torres says he thought he was going to be leaving the house after the first one, but he gathered more evidence. And that's when –  Yes, but that's when he made a decision that he was going to arrest. Yes, and he continued. And based on the record, the reason he did that was because now they realized from the documents, not from what he said, the documents on the computer, that he was buying and selling the stuff, not just looking at it. Yes, but he continues to question without Miranda about the stuff that he finds on the computer at the home. I know that. Yes, we do. And on exit of record – Wait a minute. Back up to something a minute. The judge did suppress everything before the Miranda warning, right? Correct. And so – but we know that they found more information in question about that without Miranda from exit of record 90 and 91. If you go along – But here's what I'm looking for, at least, is something that shows that they intentionally subverted Miranda. I mean, that's the point of the two-step thing, using two steps deliberately to trap somebody rather than not. And I just don't understand how you can figure that out without knowing what was said both times. You think you can. I think you make a nice point, but I think that's the government's problem and not our problem because, again, it's their burden to show that there wasn't a deliberate interrogation in this point. So if you don't have that information, we need to go – Or let's bring in the team. Do you think you have – I don't mean this to be facetious. It's a serious question. Do you think that all you have to do is bring the motion to suppress based on the two-step process and rest, and that is sufficient to put the burden on the government to come forward to prove that it did not engage in two steps for an ulterior purpose? I would say if we submitted a declaration perhaps from Mr. Phipps or alleged detailed facts such as Mr. Phipps establishing custody, and then that he was questioned after custody without Miranda, and then subsequently a short time later, 15 to 20 minutes, I was given my Miranda rights and questioned again, that would be sufficient to place the burden properly on the government to show that there was not a deliberate two-step process. Okay. Thank you. Ms. Perry. Ann Perry on behalf of the United States. Counsel, I can't figure out why you didn't give us the transcripts. Honestly, I wasn't here. I don't mean you personally. I don't care what role you played in the case. I mean your side of the case. I don't know, Your Honors. I was not even in the State at the time that the briefs were being written. I don't care about you personally. I understand. I mean the prosecution. The analysis that the district court is supposed to perform and the analysis that we're supposed to perform includes, among other things, addressing the overlapping content of the two rounds of interrogation and the extent to which the interrogator's questions treated the second round as continuous with the first and whether any curative measures were taken. So I would sort of like to read what the cops asked in each one. In the first one, they might have said, hey, where's your computer? What room is it in? Do you mind if I go in there? What's your password so I can get into your files? And in the second one, they might have said, okay, we start all over. What we got from you before was before your Miranda warning. It can't be used against you. And we're just starting fresh now. Here's a Miranda warning. And now let's chat. Maybe that was what they said. Or maybe what they said was, look, you already let the cat out of the bag. And now I'm going to ask you the very same questions and see if you give me the same answers or if I'm going to call you a liar and use your pre-Miranda statements to impeach you. And here's what you said before. I don't know. And I'd kind of like it if you would give me the transcript and if defense counsel would give me the transcript so I could make a judgment. I understand, Judge Kleinfeld. We didn't do it. And I don't know if that means that this Court cannot make a ruling on this case. So should you win or should we just remand so that it can be done right before it gets up here? I think we should win, and I'll tell you why. Why? Because the objective evidence external of the transcripts explain that there was no two-step process. But we both know that there's other evidence out there, and not only have we not seen it, the judge made a finding of fact that it was not a deliberate two-step. But we know that the judge did not read the transcripts to make those findings. I understand. The question is, did he commit clear error? And the answer to that is no, because based on the evidence that we have, this case is so far removed from Williams or Siebert or any of the other cases in the two-step process. How do we know? Let's just start with what it was. I mean, you have some things that I mentioned questioning your adversary, the ones at home, ones in the station. Then you have other things that cut the other way, like he's handcuffed at home, he's not free to go. The time between the two interrogations is only 15 or 20 minutes, which one of the cases held was not enough for it to be separate and independent. I mean, there's stuff there that goes both ways. I understand. But I think that the factual scenario in which the first interrogation took place really takes precedence. If you look, well, of course you have. Factual scenario is kind of bad. He's handcuffed and interrogated and not free to go. But it was during the execution of a search warrant. At the time that the agents went there, by the very nature of a search warrant, they don't even know if the defendant is going to be there. That is so different from Williams or Siebert, where the person was targeted, was solicited in the case of, I believe it was Siebert. In the Williams case, I think it was a State Department case with the individuals called down to the Department of Diplomatic Security office. And that's an entirely different situation here. This was a situation that was in flux. There were, as Judge Burns actually said, there were probably too many agents. What would be wrong with us holding that a judge cannot perform the analysis necessary under Williams without evaluating the content of the interrogations to the extent that that content is obtainable? And that in this case, since it was perfectly obtainable, it was all recorded, the district judge abused his discretion by deciding the case without reviewing essential evidence. It's not an abuse of discretion standard. It's clear error. The judge had to be clear. It's clear error when we're reviewing a finding, but when we're deciding his procedure for hearing the case and reaching his findings, that's abuse of discretion. Even if the Court is to find that an abuse of discretion is the standard here, there was no abuse of discretion. There was. We had another case where we said there was abuse of discretion because the judge said, I don't need to look at the evidence. We had an en banc where we said that's abuse of discretion. He didn't say that. In this case, he listened to extensive testimony on the part of the agent. Even Mr. Phipps testified in this particular case. The agent provided information from which this Court could conclude that there was certainly some overlap in the topics that were discussed first at the home and then at the police station. However, again, this is a totally different scenario from Williams and Siebert, and it has to be distinguished because the – during the discussions at the home, there were people running around. Mr. Phipps's parents were there. People were coming in and out of the room where agent – or Deputy Torres was talking with Mr. Phipps. It's an entirely different scenario than a deliberately staged two-step interrogation. There was absolutely nothing deliberate about this. The – Your Honors will recall from your obvious review of the excerpts of record in this case that the Court held that both statements were voluntary based on the evidence that was before him. The defendant moved to suppress his statements, claimed that it was a deliberate two-step process. On the evidence that was presented to the district court, he did not clearly err, nor did he commit an abuse of discretion, and that's the standard. This Court heard that the agents went there on January 10th, 2007, to conduct a search warrant. They did that. There were many steps in the execution of that search warrant that were criticized. But if the Court takes a look at what happened, a lot of it has to do with just what happens during a search warrant, issues of agent security, issues of tampering of evidence. Not unlike the last case that you all were considering, this involved the use of a This particular computer had an encryption program on it, which is part of the excerpts of record. And that's one of the reasons the agents were there for so long, because they were concerned that if they turned the computer off, all the evidence would be lost. And the excerpts of record in both briefs make reference to the fact that it took approximately 13 hours to download the information off this particular computer. That's what was directing this case. That was what was directing the activities of the agents, not a process designed to get statements out of him. That what was happening was being driven by a computer and the feelings of the agent, which turned out to be correct, that if they turned it off, they wouldn't be able to ever get back on it. And it was about three hours into that that Mr. Phipps was having to go. I don't understand what that has to do with anything. I mean, sure, it takes a long time to do this kind of search, but I can't figure out how to connect it up with the LSTAT, Siebert, and their Ninth Circuit progeny. Sure. And I hope I can do that for you. The difference between those cases, or I should say the reason that this is more as LSTAT than Williams and Siebert, is because the statements that were taken from Mr. Phipps during this time frame, part of the reason that the judge ruled that that was not voluntary is he was there for so long and he was not free to go. One of the reasons he was there for so long was this whole issue of the computer search. Yeah. So why? If, Your Honor, if he had elected to leave, then we wouldn't even be here. We wouldn't be discussing this whole situation. And the whole point of the Phipps case was to execute a warrant. It wasn't to obtain statements from Mr. Phipps. And that's what the evidence is presented to the district court. Oh, so you're bringing this up just to explain why the circumstances don't tend to undermine the finding that it wasn't a deliberate two-step. Right. It's just it was so different. And it's, you know, the world in which we live now with computer searches. Mr. Bernkow, do you want to make anything to say? Great. Thank you, counsel, for your arguments. Thank you. It's a pleasure to be here.
judges: Hall, Rymer, Kleinfeld